IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ILEANA VAZQUEZ-BORGES,

   Plaintiff,

     v.                                    CIVIL NO. 13-1717 (CVR)

NUPRESS OF MIAMI, INC.,

   Defendant

## OPINION AND ORDER

### INTRODUCTION

Plaintiff Ileana Vazquez-Borges (hereinafter "Plaintiff" or "Vázquez") brings forth this action claiming breach of her rights as an exclusive sales representative for Defendant NuPress of Miami, Inc. (hereinafter "Defendant" or "NuPress"). NuPress is a printing company which offers package printing, off-set printing, bindery and die-cutting, and operates from a facility in Miami, Florida.

On August 31, 2015, and after certain discovery issues, the Court held a Status Conference and issued its corresponding report with future calendar dates. (Docket No. 54). On January 28, 2016, however, counsel for Defendant requested leave to withdraw as counsel, which the Court granted. At that same time, the Court granted thirty (30) days for Defendant to appear with new counsel. (Docket Nos. 60 and 61). NuPress failed to abide by the Court's Order, and failed to appear with new counsel. Plaintiff then filed a motion requesting default, and later, default judgment. (Docket Nos. 63 and 66). The request for default judgment was accompanied by a Statement under Penalty of Perjury from Plaintiff. Since Defendant has failed to appear with counsel, Plaintiff's request for

default judgment stands unopposed and will be analyzed as a request for summary disposition of this case.

## STANDARD

Rule 56 of the Federal Rules of Civil Procedure sets forth the standard in order for the Court to enter summary judgment. Said rule provides that "the judgment sought shall be rendered forthwith if the pleadings, answer to interrogatories, and admissions together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See also Lipsett v. Univ. of Puerto Rico, 864 F.2d. 881, 894 (1st Cir. 1998).

The movant must clearly establish the absence of any material fact and that is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317; 106 S.Ct. 2548 (1986); Kauffman v. Puerto Rico Tel. Co., 849 F.2d 1169 (1st Cir. 1988). The existence of some alleged factual dispute will not defeat a summary judgment motion. In order to defeat the motion the facts in dispute must be material. See Kenny v. Josephthal & Co., Inc., 814 F.2d. 798, 804 (1st Cir. 1987).

If the moving party has effectively sustained its burden, any party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial. In this context, "genuine" means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party and "material" means that the fact is one that might affect the outcome of the suit under the governing law. United States v. One Parcel of Real Property, 960 F.2d. 200, 204 (1st. Cir. 1992). The non-movant must support allegations made in the pleadings with particular facts and arguments. See Coll v. PB Diagnostic Sys., Inc., 50 F.3d 1115 (1st Cir, 1995); Local No. 48

United Bhd. of Carpenters and Joiners of Am. v. United Bhd. of Carpenters and Joiners of Am., 920 F.2d. 1047 (1st Cir. 1990); and Griggs-Ryan v. Smith, 904 F.2d 112 (1st Cir. 1990).  At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor."  Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

The Court of Appeals for the First Circuit has "emphasized the importance of local rules similar to Local Rule 56 [of the District of Puerto Rico]."  Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007); see also, Colón v. Infotech Aerospace Servs., Inc., 869 F.Supp.2d 220, 225-226 (D.P.R. 2012).  Rules such as Local Rule 56 "are designed to function as a means of 'focusing a district court's attention on what is -and what is not- genuinely controverted.' " Calvi v. Knox County, 470 F.3d 422, 427 (1st Cir. 2006)).  Local Rule 56 imposes guidelines for both the movant and the party opposing summary judgment.  A party moving for summary judgment must submit factual assertions in "a separate, short, and concise statement of material facts, set forth in numbered paragraphs." Loc. Rule 56(b). A party opposing a motion for summary judgment must "admit, deny, or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of facts." Loc. Rule 56 (c).   If they so wish, they may submit a separate statement of facts which they believe are in controversy.  Facts which are properly supported "shall be deemed admitted unless properly controverted." Loc. Rule 56(e); P.R. Am. Ins. Co. v. Rivera-Vázquez, 603 F.3d 125, 130 (1st Cir.  2010) and Colón, 869 F.Supp.2d at 226.

<u>Ileana Vazquez-Borges v. Nupress of Miami, Inc.</u>
Civil No. 13-1717(CVR)
Opinion and Order
Page 4

_____

As previously stated, Defendant has not only failed to appear with counsel, but has also not opposed Plaintiff's pleadings moving for judgment in Plaintiff's favor.

## FINDINGS OF FACT

1. Plaintiff Ileana Vázquez Borges is of legal age, single, and resident of San Lorenzo, Puerto Rico.   Docket No. 66-1.

2. Defendant NuPress is a corporation based in the state of Florida and is engaged in the business of manufacturing commercial printing documents and products. <u>Id</u>. at ¶ 2.

3. In September 1998, Plaintiff and NuPress entered into an agreement, whereby Plaintiff would be the latter's sales representative in Puerto Rico.  At that time, Plaintiff became Defendant's only and exclusive sales representative in Puerto Rico.  <u>Id</u>. at ¶ 3.

4. As part of the terms pursuant to which Plaintiff was contracted, she was to receive a base draw payment of $35,000.00 per year payable on a biweekly basis, business expense payments, a gasoline stipend, mobile telephone, paid vacation leave of 15 days a year based on yearly-earned income, and office expense payments.  <u>Id</u>. at ¶ 4.

5. Plaintiff's services for NuPress pursuant to those terms began on January 25, 1999, as her work commitments with JMD Communications ended in January 15, 1999.  NuPress' offices were located in Puerta de Tierra, in San Juan, Puerto Rico.  <u>Id</u>. at ¶ 5.

<u>Ileana Vazquez-Borges v. Nupress of Miami, Inc.</u>
Civil No. 13-1717(CVR)
Opinion and Order
Page 5

6.  As exclusive sales representative, Plaintiff promoted and executed contracts and purchase orders in Puerto Rico for NuPress, marketed NuPress' products and services, developed and increased NuPress' clientele in Puerto Rico, and expanded the Puerto Rico market for NuPress.  <u>Id</u>. at ¶ 6.

7.  Plaintiff had complete discretion regarding the way to carry out her duties and proceed with her sales.  She would submit orders to NuPress according to the specifications, art work, and design of the client, and NuPress would quote the price to the client for the approval of the purchase order.  Once the client approved the sale, it was executed.  <u>Id</u>. at ¶ 7.

8.  Plaintiff was not supervised by anyone at NuPress, nor was she subject to employment manuals, disciplinary guidelines, nor evaluations.  Furthermore, she was never subjected to quotas or sales guidelines, nor was she ever required to take any training or to submit reports of sales, clients, the way she developed the business, or the way she promoted and marketed NuPress' products and services.  <u>Id</u>.

9.  Plaintiff had no obligation to invest any money or to engage in expenses for promotion purposes.  However, for Plaintiff's work as a sales representative, she had to engage in efforts to identify and visit clients, and using her discretion, knowledge and experience, she would engage in the corresponding sales efforts.  Furthermore, as a way of retaining the clients and of assuring that the clients would always be satisfied, Plaintiff would follow up on orders and tried to ensure the clients were satisfied, and if there were any problems with the orders, she would make sure they would be duly taken care of and corrected.  <u>Id</u>. at ¶ 8.

<u>Ileana Vazquez-Borges v. Nupress of Miami, Inc.</u>
Civil No. 13-1717(CVR)
Opinion and Order
Page 6

10. Plaintiff's sales during the year 1999 reached $128,218.00.  Her sales in the year 2000 reached $453,316.00.  <u>Id</u>. at ¶ 9.

11. As a result of the increase in sales, Plaintiff proposed to NuPress a change in the terms of her agreement and compensation.  The parties agreed in January 2001 that she would continue receiving a yearly payment of $35,000.00 and the existing contractual conditions would remain the same, with the only difference that from 2001 on, she would receive an additional payment equivalent to a 2% commission on the sales.  NuPress' officials with whom the agreement was reached were Orlando López and Enrique de la Vega, NuPress' corporate representatives.  <u>Id</u>. at ¶ 11.

12. Plaintiff's sales for the year 2001 were $410,103.00, and she was owed $8,202.06 in commissions.  Those commissions were never paid to Plaintiff nor the commissions corresponding to the period from January until June 2002, because NuPress unilaterally notified Plaintiff in June 2002 that no further commissions at the 2% rate were going to be paid.  <u>Id</u>. at ¶ 12.

13. Thereafter, NuPress continued paying commissions for sales, but without notifying Plaintiff what was the specific commission rate.  NuPress would send her a sales report setting forth a commission rate per sale that NuPress would arbitrarily choose.  Even after this, NuPress failed to pay all her of the commissions it reported.  <u>Id</u>. at ¶ 13.

14. Plaintiff's sales in Puerto Rico for the subsequent years after 2001 were as follows:

    2002-   $520,780.30

    2003-   $494,205.29

    2004-   $560,253.97

    2005-   $349,187.00

    2006-   $322,025.00

    2007-   $424,379.50

Id. at ¶¶ 14, 19.

15. In September 2006, Plaintiff Vázquez visited the offices of NuPress in Miami, Florida and at a meeting with Enrique de la Vega, discussed the contractual conditions and the existing business circumstances of the company in the United States and Puerto Rico.  No agreement was reached at that time with respect to any changes in her contractual terms.  Id. at ¶ 15.

16. In May 2007, NuPress notified Plaintiff through its Comptroller that she should leave the location from which she was working for the company and that she should continue working from her home.  The Puerto Rico office was closed in June, 2007 despite the fact that Plaintiff explained to Litsy Pittser, then-Comptroller for NuPress, that she lived far from San Juan and that most of the clients were located in the San Juan metro area.  Id. at ¶ 16.

17. Beginning in July 2007, Plaintiff began to work from her home in San Lorenzo, Puerto Rico.  She had to buy a laptop computer with wireless internet capability in order to be able to contact the clients.  Id. at ¶ 17.

18. NuPress did not reimburse Plaintiff for these new expenses, nor for the increase in the water and electricity bill at her home for working from there as she was now required to.  Id. at ¶ 18.

19. In spite of those new circumstances, Plaintiff managed to increase the sales for the company in the year 2007, reaching $424,379.50.  Id. at ¶ 19.

20. Despite an agreement that Plaintiff was going to get paid for time off at a rate of 15 days per year, she was only able to enjoy and get paid part of that time and she is still owed the following days for the following years:

| 2001- | 7 days |
|-------|--------|
| 2003- | 5 days |
| 2004- | 8 days |
| 2005- | 8 days |
| 2006- | 7 days |
| 2007- | 7 days |

Id. at ¶ 20.

21. On July 24, 2008, Plaintiff received a communication from Enrique de la Vega, then President of NuPress, informing her that effective on July 31, 2008 she was no longer going to continue being the sales representative of NuPress in Puerto Rico.  Id. at ¶ 21.

22. Mr. De la Vega informed in said letter that Plaintiff's sales did not justify the cost of having a sales representative in Puerto Rico.  Id. at ¶ 7.

23. Despite the expense savings that Plaintiff had achieved for the company in Puerto Rico, and despite how she managed to continue maintaining the highest possible

sales level as its exclusive sales representative in what had clearly been a declining economy in Puerto Rico, beginning in 2002 NuPress made unilateral changes in her payments to her detriment, and in the year 2008 even attempted to eliminate the reimbursement of expenses, trying to make her to continue working just as a salesperson on a commission basis. Id. at ¶ 23.

24. Plaintiff did not accept the changes that NuPress was imposing on her, but nonetheless she continued working due to her economic needs and the time, energy, and efforts invested in the development of a clientele in Puerto Rico for NuPress and for herself over the years until she was dismissed.  Id. at ¶ 24.

25. NuPress could not unilaterally alter, change or terminate Plaintiff's contractual terms without just cause, considering the fact that throughout the years she reduced the expenses and costs of the operation in Puerto Rico, maintained and increased the sales for the company over the years except for the years 2005 and 2006, and still maintained an average sales record for the period 2000 until the year 2007 of $441,781.16.  This figure is over $106,175.16 from the average of the lowest years, 2005 and 2006, when she averaged $335,606 in sales.  Id. at ¶ 25.

26. NuPress also owes Plaintiff the following commissions earned for the following years:

    2001-  $8,202.06

    2002-  $10,415.60

    2003-  $7,869.10

    2007-  $5,822.59

    2008-  $1,415.00

<u>Ileana Vazquez-Borges v. Nupress of Miami, Inc.</u>
Civil No. 13-1717(CVR)
Opinion and Order
Page 10

_____

<u>Total</u>- $33,724.35

<u>Id</u>. at ¶ 26.

21. NuPress further owes the Plaintiff for vacation leave never paid at a yearly rate

on the basis of the income earned in each of those years:

| Days | Yearly Income | Weekly Income | Daily Income | Amount Owed |
|------|---------------|---------------|--------------|-------------|
| 2001 - 7 days | $43,202.06 | $830.80 | $172.63 | $1,163.13 |
| 2003 - 5 days | $44,884.10 | $863.15 | $172.63 | $863.15 |
| 2004 - 8 days | $46,205.00 | $888.55 | $177.71 | $1,421.69 |
| 2005 - 8 days | $41,983.60 | $807.37 | $161.47 | $1,291.80 |
| 2006 - 7 days | $41,440.50 | $796.93 | $159.38 | $1,115.70 |
| 2007 - 7 days | $42,593.00 | $819.09 | $163.81 | $1,146.73 |
| 2008 - 8 days | $23,433.78 | $772.62 | $154.52 | $1,236.20 |
| | | | Total: | $8,238.40 |

<u>Id</u>. at ¶ 27.

22. NuPress also owes Plaintiff amounts corresponding to reimbursements that

include stipends, mobile phone, and representation expenses for the period

beginning May 2008 until the termination of the contract, for which she

submitted the corresponding expense claims.  These expenses amount to a total

of $1,374.49.  <u>Id</u>. at ¶ 28.

23. Plaintiff's average income during her last five full years (2003 through 2007

including 2007) working as a sales representative for NuPress was $43,421.24.

<u>Id</u>. at ¶ 29.

24. After the termination of Plaintiff's contract, in the year 2008 NuPress continued contacting and doing business with the clients that Plaintiff had obtained and established a business relationship with as part of her sales efforts.  Among them, Plaintiff recalls Gladys Díaz from GMD Public Relations Consultant, Brenda Fantauzzi and Milestone Communications.  Id. at ¶ 30.

## LEGAL ANALYSIS

Under Puerto Rico law, in order for a valid contract to exist, there must be a meeting of the minds between two or more parties, and the agreement must comply with three (3) requirements, to wit: consent, cause and consideration.  P.R Laws Ann. tit. 31, §3391.  In Puerto Rico the principle of freedom to contract is paramount in private relations, and parties can enter into any contracts as long as they are not contrary to laws, morals or the public order.  P.R Laws Ann. tit. 31, §3372; see also Irizarry López v. García Cámara, 155 D.P.R. 713 (2001), Trinidad v. Chade, 153 D.P.R. 280 (2001), and Arthur Young v. Vega III, 136 D.P.R. 157 (1994).

When the contract is perfected, the parties are bound by its terms and the consequences of the agreement; this now constitutes the law between the parties, and its terms must be complied with.   P.R Laws Ann. tit. 31, §3375; Trinidad v. Chade, supra. Accordingly, when a contract is valid and lacks any defects, the parties must comply with its terms.  Constructora  Bauzá v. García López, 129 D.P.R. 579, 593 (1991); Cervecería Corona v. Commonwealth Ins., 115 D.P.R. 345 (1984).   This is why Article 1054 of the Civil Code obligates anyone who breaches a contract to indemnify the party aggrieved by the breach if damages are caused.  P.R Laws Ann. tit. 31, §3018.  Finally, contract law stresses another principle, that of good faith and fair dealing, as set forth in Article 1210

of Puerto Rico's Civil Code.  P.R Laws Ann. tit. 31, §3375; see also Ramírez v. Club Cala, 123 D.P.R. 339 (1989)(where the Supreme Court of Puerto Rico stated that the duty to act in good faith is of utmost importance and extends to the whole legal system and all juridical relations).

It is uncontested that Plaintiff entered into a contract with Defendant to become the exclusive sales representative of NuPress in Puerto Rico in the year 1998.  The Plaintiff's sales representative contract is also regulated by the Sales Representatives Act of Puerto Rico, Act No. 21 of December 5, 1990, pursuant to which Plaintiff claims certain statutory damages.  P.R Laws Ann. tit. 10, §§279, et. seq.  Pursuant to said law, a sales representative is defined as "an independent entrepreneur who establishes a sales representation contract of an exclusive nature, with a principal or grantor, and who is assigned a specific territory or market, within the Commonwealth of Puerto Rico".  Id. The statute further provides that such a relationship cannot be terminated by the principal except for just cause.  P.R Laws Ann. tit. 10, §279a.

Just cause consists of violations by the sales representative to the terms of the contract.  Noncompliance of any of the essential obligations of the sales representation contract by the sales representative, or any act or omission on his/her part that may adversely and substantially affect the interests of the principal or grantor in the development of the market or the sale of merchandise or services is considered just cause for termination of the sales representative.  P.R Laws Ann. tit. 10, §279 (d).

On the other hand, a principal or grantor is considered to have impaired the established business relationship in any of the following cases: when the principal establishes facilities in Puerto Rico to directly promote its sales; when it contracts other

sales representative in the same area; when it refuses to serve, without just reason, orders tendered by the representative; when the principal unilaterally changes the terms of the contract to the prejudice of the representatives; and in the continuous and unjustified delay in the service of the orders made by the sales representative.  P.R Laws Ann. tit. 10, §279b(b).  The statute also places the burden of proof to justify the termination of the contract on the principal or grantor.  Id.

It is undisputed that Plaintiff Vázquez was an exclusive sales representative of the Defendant in Puerto Rico, and acted accordingly throughout a period of more than seven (7) years.  The contract did not have a fixed term, but throughout the time Plaintiff worked for NuPress, she kept a sales record much greater than her sales record of the first year. In fact, between the first year and the second year, she increased her sales by more than 350%, and her sales exceeded $400,000.00 after the second year, except for the years 2005 and 2006.  She reached those high sales despite the fact that no quotas were ever imposed on her, and during her term as sales representative she even saved money for the Defendant.  Later on, Plaintiff engaged in the development and maintenance of her sales efforts without an office and while working from her own home.

The uncontested facts also show that, notwithstanding that Plaintiff greatly increased NuPress' Puerto Rico business, Defendant gradually and unilaterally eroded her benefits and contractual terms, until it finally terminated her.   No justification was given to Plaintiff for her termination except the fact that "the cost" did not justify her employment. Yet, Plaintiff's sales quotas seem to belie this assertion by Defendant.  "Only when the ... [sales representative] fails to comply with any of the essential conditions or adversely affects in a substantial manner the interest of the principal, may the latter

terminate the contract without payment for damages." <u>Warner Lambert Co. v. Tribunal Superior</u>, 1 P.R. Offic. Trans. 527, 101 D.P.R. 378, 400 (1973).  The lack of any opposition whatsoever by Defendant in the instant case to the facts presented by Plaintiff is telling, and Plaintiff's almost fourfold increase in sales from the first year to the second year of employment, and her continued high sales thereafter, militates against Defendant.

Finally, it is also worthy of noting that, after Plaintiff's termination, NuPress continued to effect business in Puerto Rico with Plaintiff's previous clients, in open violation of Puerto Rico law.  Thus, Defendant has not met its burden of establishing that Plaintiff's termination was effected with just cause and, quite the opposite, has established that Defendant itself impaired the existing business relationship.

When sales representative contracts are terminated without just cause, the law provides for certain statutory damages.  The applicable formula in this case provides that the terminated representative will be entitled to five (5) times the average of the annual benefits obtained during the last five (5) years.  P.R. Laws Ann. tit. 10, §279c (c).  The Court can also take into account the value of the good will of the representative's business. <u>Id</u>.

Plaintiff's average income over the five (5) year period prior to the year of the termination was $43,421.24.  Therefore, the statutory damages payable under the statute due to the breach of the contract amount to $217,106.20.

The record further establishes that the Defendant breached its obligations under the contract, and terminated Plaintiff while owing her payment of certain sums earned as part of her duties.  Those sums are: $33,724.35 for commissions; $8,238.40 for paid time

off (vacation); and $1,374.49 for expense reimbursements.  These amounts add up to a total of $43,337.24.

Therefore, Plaintiff is hereby awarded the full amount owed for commissions and expenses, plus the statutory damages awarded pursuant to the law.  These sums add up to a total of $260,443.44.

## CONCLUSION

For the aforementioned reasons, the Court GRANTS Defendant's Motion for Default Judgment (Docket No. 66).  Plaintiff is hereby awarded to total sum of **$260,443.44.**  This amount comprises the statutory damages payable under the law, as well as commissions, expenses and paid time off owed as part of her contract with Defendant.  Judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 25th day of April, 2016.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ RIVE
UNITED STATES MAGISTRATE JUDGE